**File Name:  06a0299n.06**
**Filed:  May 1, 2006**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No.:05-3366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LON RASI
    *Petitioner*

                                   Petition for Review of an Order
                                   of the Board of Immigration Appeals

        v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
    *Respondent*
_____/

BEFORE:  KENNEDY,  COLE, and MCKEAGUE Circuit Judges.

KENNEDY, Circuit Judge.   Petitioner, Lon Rasi, petitions for review of the Board of Immigration Appeal's ("BIA") order upholding the immigration judge's ("IJ") decision to deny his application for asylum pursuant to Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1159, application for withholding of removal pursuant to Section 241(b)(3) of the INA, and request for withholding of removal pursuant to the United Nations Convention Against Torture ("CAT"), 8 C.F.R. §1208.16.  Petitioner argues the BIA erred in holding his application for asylum untimely and in adopting the immigration judge's findings that he did not establish either past persecution or a well founded fear of future persecution.  For the following reasons we **AFFIRM** the decision of the BIA and **DENY** the petition for appeal.

## BACKGROUND

Petitioner, Lon Rasi ("Rasi"), is an ethnic Albanian from Kosovo of the Former Republic of Yugoslavia. Rasi a native and a citizen of Yugoslavia. He claims he first entered the United States at Miami on or about October 20, 1999, when he was twenty-four years old. JA at 212.

On July 6, 2001, Rasi was served with a Notice to Appear ("NTA") alleging removability for entry without valid documents pursuant to 237(a)(1)(A) of the INA, 8 U.S.C. § 1227(a)(1)(A). On October 23, 2001, Rasi, through his attorney, admitted the factual allegations in the NTA and conceded removability. Rasi declined to designate a country of removal but because he claims he is a native and citizen of Yugoslavia, the immigration judge designated Yugoslavia. Rasi submitted applications for asylum, withholding of removal, and CAT protection. On September 2, 2003, the immigration judge held an evidentiary hearing on Rasi's applications. Only Rasi testified at the hearing.

Rasi testified that on March 15, 1998, he went with his brother and father to the market to sell fruits and vegetables. The police tried to close the market early and his father protested which resulted in the police beating up his father and holding Rasi and his brother at gunpoint. Rasi testified that they were taken to a police station, detained for 70 hours, and given nothing to eat or drink. Notably, while Rasi's written asylum application indicated that during this incident he had been beaten, Rasi testified that neither he nor his brother were beaten.

Next, Rasi testified that on June 6, 1998, police came to his family home and forced them to leave. When he and his family returned, "all the stuff around our home had been stolen, and taken away." JA at 273. After this incident, Rasi stated that he did feel safe for some time; however, he no longer felt safe as of February 1, 1999, when police came to his family home again and took Rasi

2

and his brother away from their parents. Rasi testified that they were detained in a basement of a house along with 22 to 25 men. He stated that the police would come and take away three or four men each day, and that those men never returned to the house. Rasi testified that on February 5 or 6, 1999, he and his brother and two others were taken from the house to a jail in Istok. Rasi explained they were able to escape from the jail and that after walking for a long time, they arrived in Montenegro on or about February 27, 1999. They stayed there for three months.

Rasi testified that he went from Montenegro to Croatia for two weeks and then back to Bosnia for approximately three months. He then went to Italy and then "to France and to somewhere else. I don't know". Rasi testified that he went from France, "straight to the U.S.". JA at 283.

The IJ then interrupted Rasi's direct examination to question him about his travels to the United States. Rasi testified that he left France by airplane and that the plane stopped somewhere, for about an hour, and then he went by boat to Miami, Florida. JA at 285.

Once in the United States, Rasi testified that he met with a woman named Cheryl Daindrich. Rasi stated that he had intended to seek asylum and that he had signed "some papers" but that he "didn't know as to what those papers were." JA at 287. Rasi said that he found out on February 21, 2001, that she had filed an application for Temporary Protected Status ("TPS") on his behalf, not asylum, and his TPS application was denied. Rasi stated he did not know if Ms. Daindrich was an attorney and that he never filed a complaint against her with the Michigan State Bar. JA at 294.

On cross-examination, Rasi testified that his brother, Luigi, lived with him in Michigan and was with him during the March 1998, June 1998, and February 1999 incidents. The IJ asked Rasi why his brother was not in court "corroborating those incidents" and he responded, "I don't know why; he's at work." JA at 291.

3

Rasi was asked if there were any other incidents when he was harmed or felt threatened other than those in March 1998 and February 1999. Rasi testified that there were "a lot of occurrences" but that he did not recall the date other than that it was 1998. However, Rasi later testified that he was actually only referring to the June 6, 1998, incident and that there were no other incidents.

The IJ found that Rasi's application for asylum was time-barred. The IJ also held that Rasi's testimony was not credible, that he did not establish either past persecution or a well-founded fear of future persecution on account of his " race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.§ 1231 (b)(3)(A). The IJ then denied Rasi's asylum application (assuming it was not time-barred), his application for withholding, and CAT protection on the merits.

Rasi appealed the IJ's decision to the BIA. On March 2, 2005, the BIA adopted and affirmed the decision of the IJ "insofar as he found that the respondent had not satisfied the filing requirements for asylum or established eligibility for withholding of removal." JA at 2. The BIA dismissed Rasi's appeal and this petition for review followed.

## ANALYSIS

### I. Application For Asylum

Section 208(a)(2) of the INA, 8 U.S.C. §1158(a)(2)(B) requires aliens to apply for asylum within one year of their arrival in the United States. Untimely applications are considered only if there are changed circumstances materially affecting the applicant's eligibility for asylum or extraordinary circumstances that justify the delay. 8 U.S.C. §1158(a)(2)(D).

The BIA adopted the finding of the IJ that Rasi "had not satisfied the filing requirements for asylum." JA at 2. Rasi contends that the BIA erred in finding that his application is untimely and

4

he points to surrounding circumstances that he contends fall under the exceptions in 8 U.S.C. §1158(a)(2)(D).

In *Castellano-Chacon v. I.N.S.*, we addressed whether we have jurisdiction to review a decision by the BIA that an application is untimely in light of 8 U.S.C. §1158(a)(3) which states that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." We held that "we are barred from reviewing the BIA's decision denying [Petitioner's] application on the basis that it was untimely and must therefore affirm the BIA's decision on this point." 341 F.3d 533, 544 (6th Cir. 2003). Notably, the jurisdictional preclusion includes a bar to review any determination regarding the applicability of exceptions to the one-year rule. 8 U.S.C. §1158.

Rasi concedes that discretionary rulings of the Attorney General are not judicially reviewable but contends that "the failure to perform the evaluation and analysis mandated by the statute and the CFR are reviewable de novo." Pet. Br. at 16. We need not comment upon whether such behavior would, in fact, be subject to de novo review because we find that the IJ in this case sufficiently evaluated Rasi's explanations for why he waited to file his asylum application. *See* JA 214-216.

Thus, we lack jurisdiction to review the BIA's determination that Rasi's asylum application was untimely.

## II. Application for Withholding of Removal

The BIA adopted the IJ's findings regarding Rasi's eligibility for withholding of removal. JA at 2. Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal. *Denko v. INS,* 351 F.3d 717, 723 (6th Cir. 2003). Rasi contends that the IJ and the BIA erred in denying his application for

withholding of removal because he alleges he has a "legitimate fear that his very status as a refugee, as well as a Catholic ethnic Albanian places him at risk." Pet. Br. at 26.

In order to qualify for withholding, Rasi must demonstrate that there is a clear probability that he would be subject to persecution if he were to return to Kosovo on account his " race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.§ 1231 (b)(3)(A); *Castellano-Chacon*, 341 F.3d at 545 (a petitioner must "demonstrate that there is a clear probability that he would be subject to persecution"). To establish a clear probability of future persecution, the "applicant must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales,* 411 F.3d 631, 641 (6th Cir.2005) (quoting 8 C.F.R. § 1208.16(b)(2)). The standard of review requires us to uphold a determination against withholding unless it is "manifestly contrary to law". *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (8 U.S.C. §1252(b)(4)(C))). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S .C. § 1252(b)(4)(B)).

Rasi argues that he has proven past persecution and is entitled to a presumption of a well-founded fear of suffering future persecution under 8 C.F.R. § 208.13(b)(ii). The IJ found that Rasi's testimony was not credible and that even if it was credible the evidence he provided does not rise to the level of past persecution.

*A. Past Persecution*

In finding that Rasi was not credible, the IJ relied on numerous inconsistencies between Rasi's written application for asylum and his testimony at the evidentiary hearing. The IJ first noted that Rasi's recount of how he came to the United States "shifted remarkably" from the time

6

he signed his written application to the time he gave his testimony. JA at 216. Rasi testified at the hearing that he flew from Paris to somewhere in the Bahamas on October 14, 1999, that he stopped on an "island" (he did not indicate what island besides the Bahamas somewhere) for about an hour, and then changed planes. He said he then took a boat to Miami which took less than one day; however, in his application he indicates he arrived in the Bahamas on October 18, 1999, and in Miami on October 20th. Additionally, in his application Rasi claimed that he was in Montenegro for six months and then testified that he was only there for three months. When questioned why, Rasi stated "there isn't really any reason why." JA at 305. Finally, Rasi indicated that he has been in the U.S. less than four years, but during his examination Rasi stated that he couldn't go back to Yugoslavia "after five years." JA at 216.

The IJ also pointed out inconsistencies with respect to the alleged acts of past persecution. For example, the IJ noted that with regard to the alleged June 6, 1998, raid on his home, Rasi first claimed that his house had been raided several times before this incident. Later he backed off that claim and admitted he was actually only referring to the June 6th incident. Further, Rasi testified that everything was "stolen" from the home, but he omitted this fact from his written application. Rasi also inconsistently testified regarding the March 15, 1998 incident. In his written application Rasi states that he and his brother "were beaten and deprived of food. We were bruised all over our bodies." JA at 518. However, at the evidentiary hearing, upon questioning by the IJ, Rasi stated that he had not been beaten during this incident.

Finally, the IJ noted that even though Rasi's brother could have corroborated Rasi's testimony, he failed to do so. Rasi's brother, Luigi, was supposed to be testifying as he:

> [U]nderwent many of the same treatments as the respondent. Luigi, however, was
> not called as a witness and the only explanation for it was that Luigi is at work here

7

in the Detroit area. Other than that, no other reasonable explanation was proffered. Hence the respondent had the ability to corroborate his claim and he did not do so.

JA at 227.

Rasi challenges several of the conclusions reached by the IJ based on his testimony and written asylum application. However, it is not enough for Rasi to argue that the immigration judge could have drawn different conclusions from the evidence presented. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (finding it is "besides the point" that a record may be "adequate to support" a different conclusion). Rasi further argues that some of the inconsistencies relied on by the IJ were irrelevant, not based in fact, or related to linguistic matters.[1] However, after reviewing the aforementioned inconsistencies, and other inconsistencies cited by the IJ, we cannot say that a reasonable adjudicator would be compelled to conclude that Rasi is credible. Thus, we uphold the finding of the IJ that Rasi did not credibly establish that he suffered past persecution; consequently, Rasi is not entitled to a rebuttable presumption that he has a well-founded fear of future persecution and we need not address the IJ's alternative finding that even if credible, Rasi's allegations do not constitute past persecution under 8 C.F.R. § 208.13(b)(ii).

However, we must still address whether, even without this rebuttable presumption, Rasi has demonstrated that there is a clear probability that he would be subject to persecution if he were to return to Kosovo on account his " race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.§ 1231 (b)(3)(A).

---

[1]We note that Rasi also argues the IJ found his testimony to be consistent by pointing to the fact that the IJ stated Rasi "testified very, very consistently with the asylum application" JA at 227; however, the government submits, and we agree, that this was a typographical error given the IJ's finding was that Rasi was not credible and that his testimony was "diametrically opposed to his application signed moments before." JA at 239.

## B. Future Persecution

The IJ held that in light of both the changed country conditions in Kosovo and Rasi's own testimony, Rasi did not establish by a "clear probability" that he has well-founded fear of future persecution. Relying on the 2002 "Country Reports" for Yugoslavia, or the Former Republic of Yugoslavia, the 1999 "Country Reports" for Serbia/Montenegro, and an article entitled "Kosovo Crisis Update," the IJ found that since the United Nations took control of the government, the country conditions have "changed remarkably," and that "Albanians from Kosovo upon their return are not subject to a pattern or practice of mistreatment." JA at 230. After reviewing the reports relied on by the IJ, we cannot say that a reasonable adjudicator would be compelled to conclude to the contrary.

The IJ also found that Rasi's fear of future persecution is belied in his own testimony. Asked by the IJ why he could not go back to Kosovo given that 772,000 other Kosovars had returned, Rasi stated:

> I've never felt or said that I wouldn't go back to my place, but where could I go where my parents are not there, when my sole and only brother is here with me, when I've been here for five, over five years now, when if I get there, I don't know without time there, whether I'll find a house or work or anything at all, I have to start everything from zero, all the life from scratch, from nothing, and I know nobody. I have nobody. JA at 302.

The IJ then asked if it was "fair to say that the reason you don't want to go back is because you don't know anyone and it's inconvenient," and Rasi replied "[i]t's not, the reason is not that I do not know anybody, but my parents are not there and life is not secure; this is the reason why." JA at 302-03. We agree that Rasi's testimony suggests more of a fear of starting anew than anticipated

9

future persecution "on account of his race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.§ 1231 (b)(3)(A).

Thus, we uphold the IJ's finding that Rasi has not established by a "clear probability" that he would be subject to persecution if he were to return to Kosovo.

## III. Convention Against Torture

Rasi appeals the IJ's denial of his request for withholding of removal under Article 3 of the Convention Against Torture ("CAT"). However, because Rasi failed to challenge the denial of CAT protection before the BIA, he failed to exhaust his administrative remedies with respect to this claim. Thus, we are without jurisdiction to consider it now. 8 U.S.C. § 1252(d)(1); *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003); *Gilaj v. Gonzales*, 408 F.3d 275, 289 (6th Cir. 2005) ("we have jurisdiction to review only those claims for which the applicant has exhausted the administrative remedies available to the alien as a matter of right").

## CONCLUSION

For the foregoing reasons we **AFFIRM** the BIA's decision denying Rasi's application for asylum and application for withholding of removal. We **DISMISS** his claim pursuant to the legislation implementing the Convention Against Torture for lack of jurisdiction.