NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0107n.06
Filed: February 20, 2008

**No. 06-3951**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PAL GOJANI,

     Petitioner,

v.                                          ON REVIEW FROM THE BOARD OF
                                          IMMIGRATION APPEALS

MICHAEL B. MUKASEY, ATTORNEY
GENERAL,

     Respondent.

_____/


BEFORE:    MOORE, CLAY, and ROGERS, Circuit Judges.

    **CLAY, Circuit Judge.** Petitioner Pal Gojani seeks review of the Board of Immigration

Appeals' June 19, 2006 decision upholding the immigration judge's denial of his application for

asylum pursuant to 8 U.S.C. § 1158(a), withholding of removal pursuant to § 241(b)(3) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and withholding of removal under

the Convention Against Torture. For the reasons stated below, we **DENY** Gojani's petition for

review.

**BACKGROUND**

A.    **Substantive Facts**

No. 06-3951

Pal Gojani is an ethnic Albanian who is a native and citizen of Kosovo. The following facts are taken from Gojani's testimony during his asylum hearing and in his asylum application. Both Gojani and his father suffered persecution by Serbs during his youth. His father was detained and beaten by Serbian authorities due to false charges of firearms possession. Gojani himself was expelled from a teacher training school for reading books advocating the unification of Kosovo with Albania. As a result of this incident, Gojani was detained for interrogation by Serbian authorities. During his detention he was beaten so severely that his arm was broken, and he was released upon the condition that he report for future interrogations. After this detention, Serbian police monitored Gojani's activities and would sometimes follow him.

In 1981 when people began demonstrating in favor of the independence of Kosovo, Gojani was subjected to repeated interrogations by the Serbian police. The police tried to force Gojani to be an informer for the Yugoslav secret service. However, Gujani convinced them that he would not be useful since he was a Catholic whereas most Albanians are Muslim, a fact that would hinder his access to those in the secessionist movement.

In 1989 Gojani became a member of the Kosovo Democratic League ("LDK"), a political party that advocated peaceful measures for freeing Kosovo from Slobodan Milosevic's regime. In 1998, when ethnic cleansing started in Kosovo, Kosovo Liberation Army ("KLA") members tried to recruit Gojani. Gojani refused to be recruited because of his religious beliefs. During this exchange, KLA members used religious slurs and told Gojani to leave his village or else he would be considered a traitor. Many fundamentalist Muslims joined the KLA during the war and claimed that they would get rid of Albanian Catholics after they got rid of the Serbs.

2

On June 13, 1999, Gojani's cousin and his wife disappeared and were later found dead. On July 21, 1999, the KLA returned to Gojani's house and asked for him. Gojani hid while his sister-in-law told the KLA members that Gojani had left for Albania. Gojani feared that the KLA would kill him if they found him, and he stayed in hiding for a month until NATO forces gained control of the area. Even after the arrival of NATO forces hundreds of Catholics were accused of espionage and executed by KLA members.

After the end of the war, Gojani and his brother opened a cafe. Shortly after the cafe opened, two men came to the cafe and threatened Gojani because of his political allegiance. Within a week of this incident, the cafe was burnt down, and a note was left for Gojani stating: "we are going to bake you like a sheep." As a result, Gojani fled Kosovo and traveled through Albania to Canada, and finally entered the United States illegally on January 13, 2003. Shortly after his entry, he was arrested by border patrol agents.

**B.      Procedural Facts**

Gojani applied for asylum, withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), and withholding of removal pursuant to the Convention Against Torture on January 7, 2004. At a November 10, 2004 hearing before an immigration judge, Gojani testified to his experiences in Kosovo and his fear of return. To support his claims, Gojani presented affidavits from family and neighbors in Kosovo relating threats made to Gojani, Gojani's time in hiding, the burning of Gojani's cafe and fears for Gojani's safety. He also presented an official listing of the names of those who had disappeared during the war and claimed that two names on the list were those of his cousin and his wife. Gojani presented evidence of difficult conditions for Christians in Kosovo,

mainly focusing on Serbian Orthodox Christians but with some references to Catholics. The government introduced evidence of human rights conditions in Kosovo in the form of United States State Department country reports.

The immigration judge issued a written opinion on November 12, 2004 denying Gojani relief and ordering him removed from the United States to Serbia-Montenegro.[1] The immigration judge found Gojani's "factual presentation to be generalized and non-specific." (J.A. 18.) In addition, the immigration judge found that Gojani's "testimony regarding his subjective fear lacked clarity and definition." (J.A. 18.) The immigration judge focused on Gojani's failure to make distinctions between the KLA and Islamic fundamentalists. He concluded that Gojani was unable to prove that the KLA, Serbian police or Islamic fundamentalists were the cause of the alleged persecution.

The immigration judge found that even if Gojani had established past persecution, the country reports submitted by the government demonstrated changed country conditions which would rebut any presumption of a well-founded fear of future persecution. In support of this conclusion, the immigration judge cited the portions of the 2003 State Department report that indicated that the LDK was the largest political party in Kosovo, that Albanians are politically in control of Kosovo, and that peaceful elections had been held.

---

[1]At the time of Gojani's hearing, Kosovo was located within Serbia and Montenegro. Serbia and Montenegro existed as a loose federation from 2003 to 2006. Montenegro formally declared its independence from Serbia on June 3, 2006. CIA World Factbook 2008, https://www.cia.gov/library/publications/the-world-factbook/geos/rb.html. Kosovo declared its independence from Serbia on February 17, 2008. Dan Bilefsky, *Kosovo Declares Its Independence from Serbia*, N.Y. Times, Feb. 18, 2008.

On June 19, 2006, in a one paragraph order, the Board of Immigration Appeals ("BIA") summarily adopted and affirmed the immigration judge's decision. Gojani's brief to the BIA claimed that the immigration judge erred by rejecting Gojani's claim of a well-founded fear of persecution despite Gojani's evidence that established a probability of future persecution based on his political beliefs. The BIA's summary affirmance stated in relevant part:

> We adopt and affirm the decision of the Immigration Judge who found that even had the respondent been credible and had he established past persecution, which we do not concede, there have been material and substantial changed country conditions sufficient to rebut the respondent's presumption of a well-founded fear of persecution.

(J.A. 4.) Gojani also sought remand to the immigration judge because the testimony given at the hearing was recorded at times as "indiscernable" on the transcript. The BIA added, in response to this argument, that the transcript was "completely understandable and not so defective as to require a remand." (J.A. 4.)

## DISCUSSION

### A. Standard of Review

When the BIA summarily affirms the immigration judge's decision by adopting the decision as its own, we review the immigration judge's decision as the final agency decision. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Findings of fact contained in final agency decisions are reviewed under the "substantial evidence" standard. *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004). Under this standard we may only overturn an agency decision when it is not "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Id.* In order for us "to reverse the BIA's factual determinations, this Court must find that the evidence not only

supports a contrary conclusion, but indeed *compels* it." *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)).

**B.     Analysis**

**1.     Asylum Claim**

As an asylum applicant, Gojani bears the burden of establishing that he is a "refugee" who is eligible for asylum. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)(A)). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may rebut this presumption by establishing by a preponderance of the evidence that there is "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in his country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A). "[A]n asylum applicant can also prove a well-founded fear of future persecution by showing that he genuinely (subjectively) fears he will be persecuted based on a protected ground if returned to his native country, and that his fears are objectively reasonable." *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007).

Gojani argues that he offered credible testimony and corroborating evidence regarding his past persecution and well-founded fear of future persecution. Because both the BIA and the immigration judge concluded that Gojani had not established a well-founded fear of persecution even

6

assuming he had given credible testimony, Gojani's arguments regarding the immigration judge's negative credibility determination need not be addressed.

Gojani further argues that he has shown that he has a subjective fear of persecution that is objectively reasonable. In support of this claim, Gojani cites his testimony regarding past persecution due to his political opinion[2] at the hands of Serbian police, the KLA, and Islamic fundamentalists. However, the immigration judge found that Gojani did not have a well-founded fear of persecution due to changed conditions in Kosovo. The immigration judge relied principally on the State Department's Country Reports regarding the human rights situation in Kosovo. The 2003 State Department report notes that Serbian forces have withdrawn from Kosovo and that the current president of Kosovo is an Albanian from Gojani's political party. The immigration judge also highlighted parts of the report that discuss Kosovo's multi-party system, the peaceful occurrence of 2002 municipal elections, and the prominence and broad support of LDK in Kosovo. From this information, the immigration judge concluded that Gojani was unlikely to be persecuted as a result of his political opinion. Since Gojani's evidence regarding persecution of LDK members pre-dated the 2003 State Department report, there is no evidence on the record that contradicts the immigration judge's finding of changed country conditions. Thus, the immigration judge's finding that Gojani did not have a well-founded fear of persecution is supported by substantial evidence and cannot be reversed by this Court.

**2.      Convention Against Torture Claim**

---

[2]Although at his asylum hearing Gojani claimed that he had suffered persecution based on his religion, he did not pursue this basis for asylum on appeal to the BIA and makes no argument regarding this claim to this Court.

In order to qualify for relief under the Convention Against Torture, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). An immigration judge "must consider the possibility of future torture, including any evidence of past torture inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal." *Ali v. Reno*, 237 F.3d 591, 596-97 (6th Cir. 2001). In concluding that Gojani was ineligible for Convention Against Torture relief, the immigration judge relied upon the changed conditions in Kosovo upon which he based his asylum determination. As discussed above in the context of Gojani's asylum claim, the immigration judge's determination that changed conditions in Kosovo rendered unlikely the possibility that Gojani would be tortured is supported by substantial evidence.

### 3. INA Withholding of Removal Claim

In order to be granted withholding of removal pursuant to the INA, an applicant must prove "that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). An applicant for withholding of removal "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citing *INS v. Stevic*, 467 U.S. 407, 413 (1984)). This burden is greater than the burden required to establish eligibility for asylum. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). Because Gojani was unable to establish that he was eligible for asylum, the immigration judge's denial of withholding of removal under the INA is supported by substantial evidence.

**CONCLUSION**

Inasmuch as the immigration judge's denial of Gojani's application for asylum, relief under the Convention Against Torture, and withholding of removal under the INA was supported by substantial evidence we **DENY** Gojani's petition for review.