**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0138n.06
Filed: February 17, 2009

No. 08-3543

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LUSH KOLAJ, | ) | |
| | ) | ON REVIEW FROM THE |
| **Petitioner,** | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | **O P I N I O N** |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

Before: SUHRHEINRICH, GILMAN, and WHITE, Circuit Judges

HELENE N. WHITE, Circuit Judge

Petitioner Lush Kolaj seeks withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture. For the reasons discussed below, the court **DENIES** Kolaj's petition for review.

Kolaj has been in the United States since his arrival without inspection in 1983. On July 10, 2003, DHS issued Kolaj a notice to appear in removal proceedings, stating that he was a native and citizen of Yugoslavia who was subject to removal under section 212 of the Immigration and Nationality Act (INA). 8 U.S.C. § 1182(a)(6)(A). In subsequent proceedings, Kolaj conceded removability but applied for withholding of removal under the INA and the United Nations Convention Against Torture (CAT). The Immigration Judge (IJ) denied withholding of removal and, on March 12, 2007, ordered Kolaj removed to Serbia or, in the alternative, Croatia. The Board of

Immigration Appeals (BIA) affirmed without opinion. Kolaj petitioned for review by this court on

May 8, 2008.

## I. BACKGROUND

Petitioner Lush Kolaj is a 45-year-old native of Kosovo.[1] An ethnic Albanian, Kolaj's family

history is marked by the inter-ethnic strife that the Balkans has suffered over the last 100 years.

According to Kolaj, Serbian police attacked and killed members of his family – burning his great

grandfather to death in the early 1900s and killing his cousin in 1965 – because of their Albanian

ethnicity. When Kolaj was a child and adolescent, the government ostracized and beat his father and

paternal uncle in retribution for their participation in activities of the Democratic Party of Kosovo

(the DPK) and failure to participate in activities of the Communist Party. The government also

attacked Kolaj's cousin, Anson, whose activities in the DPK led to his imprisonment. From 1991

to 1993, Anson served as the vice president of Kosovo, though following an assassination attempt

he moved to Germany.

In 1981, when Kosovo was part of Yugoslavia, Kolaj joined the DPK and participated in

demonstrations regarding ethic Albanians' lack of rights. According to Kolaj's testimony, he

"screamed, yelled, wrote, whatever it [sic] was necessary." During this period, Kolaj alleges, the

---

[1]Kosovo, a landlocked nation surrounded by Serbia, Macedonia, Albania, and Montenegro, declared its independence on February 17, 2008. Prior to this declaration, Kosovo was technically an autonomous region within Serbia under the UN Interim Administration Mission in Kosovo (UNMIK) and Kosovo's Provisional Institutions of Self-Government (PISG). While Serbia does not recognize Kosovo, 52 other nations (including the United States) recognize it as an independent state.

police often picked him up and interrogated him in a room that "was completely dark."[2]  Kolaj testified that at these interrogations the police did "whatever they felt like doing with you, beating you up, slapping you, get on the ground, take your clothes off and all these things."  The police also beat Kolaj with plastic batons.  After one such beating Kolaj was "spitting blood" and required medical attention, but doctors only provided medication.

In the spring of 1981, Kolaj began residing in Croatia, living there "on and off" until 1983.  The government did not harass Kolaj in Croatia, though he suffered continued arrests and beatings when he visited his family in Kosovo.  During this period he served in the army for 14 months, spending 30 days in an army jail for complaining about his assignment.[3]

On June 1, 1983, Kolaj left Yugoslavia because of the constant beatings and his fear that the government would kill him.  He spent three months in Australia and one day in Canada before entering the United States without inspection.  In the years since his arrival in the United States, Kolaj's mother, brother, and sister joined him, the latter two obtaining political asylum.

On July 10, 2003, DHS issued Kolaj a notice to appear in removal proceedings, stating that he was a native and citizen of Yugoslavia who was subject to removal under section 212 of the INA.

---

[2]Kolaj testified that he was arrested "six, seven times, maybe eight times" and jailed three times.

[3]According to his testimony, Kolaj was upset after having been unjustifiably stripped of a position in the military police.

3

8 U.S.C. § 1182(a)(6)(A). In the ensuing proceedings, Kolaj conceded removability but applied for withholding of removal under the INA and the United Nations CAT.[4]

On March 12, 2007, after a hearing at which Kolaj testified, the IJ denied the petitioner's application and ordered him removed to Serbia or, in the alternative, Croatia. Proceeding under 8 C.F.R. § 1208.16, the IJ concluded that "the respondent is not credible" or "[m]ore accurately perhaps the Court should say he has not met his burden of proof." The IJ cited various inconsistencies and Kolaj's failure to present "one iota of corroborative evidence" although such evidence "should be and are readily available to the respondent." The IJ noted that, "even if respondent's testimony were taken as true, and the Court does not take it as true, the Court does not believe what he has detailed rises to the level of past persecution." Assuming, arguendo, the truth of Kolaj's story and that his allegation "somehow rises to the level of past persecution," the IJ further held that "there has been a fundamental change in circumstance since [] [Kolaj] left Kosovo in 1983 particularly the communist government of Kosovo and Yugoslavia and Serbia has collapsed."

Analyzing Kolaj's claim that he would likely suffer future persecution in Kosovo, the IJ felt that Kolaj failed to "demonstrate[] in today's Kosovo or Serbia there is a pattern or practice of persecution of a group of persons similarly situated" to Kolaj. Therefore, the IJ found that Kolaj failed to show it is more likely than not that he would be persecuted if he returned to Kosovo.

---

[4]The petitioner is not seeking asylum as he failed to apply for it within one year of his arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B) (explaining that an asylum applicant must "demonstrate[] by clear and convincing evidence that the application had been filed within 1 year after the date of the alien's arrival in the United States"); *see also* 8 C.F.R. 1208.4(a)(2).

With respect to Kolaj's application for withholding of removal under the United Nations CAT, the IJ again questioned Kolaj's lack of credibility and further held that "even if one were to believe his claim and believes somehow that he would be harmed by the so-called Islamic Party or Serbs in general, he has not demonstrated any required nexus to the government."

The remainder of the IJ's decision outlined the various inconsistencies, omissions, and vague statements in Kolaj's application and testimony. At the conclusion of his opinion, the IJ went through the 2005 and 2006 State Department Country Reports on Human Rights Practices for Serbia (a section of which includes Kosovo), highlighting evidence of changes in country conditions and the lack of evidence "that anyone in respondent's purported shoes was subject to a pattern or practice of persecution or even torture."

Kolaj requested the BIA review the IJ's decision. On April 11, 2008, the BIA issued a two-line per curiam order which affirmed "without opinion, the results of the decision below."

Kolaj petitioned for review by this court on May 8, 2008.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

This court has jurisdiction to review a final order of removal by the BIA pursuant to 8 U.S.C. § 1252. In this case, the BIA affirmed the IJ's decision without opinion. We, therefore, "review the IJ's decision as the final agency decision." *Denko v. I.N.S.*, 351 F.3d 717, 726 (6th Cir. 2003). With final orders of removal, the court reviews legal conclusions de novo and "factual findings under the substantial evidence standard." *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008) (factual findings); *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (legal conclusions). Under the

5

substantial evidence standard, "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). This means that "the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) ("To reverse the BIA's determination, we must find that the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" (quoting *Yu*, 364 F.3d at 702)).

**B. Withholding of Removal Under the Immigration and Nationality Act**

Under the Immigration and Nationality Act, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To make such a showing, an applicant for withholding of removal can establish that he or she "suffered past persecution in the proposed country of removal" on account of one of the aforementioned factors, creating a presumption "that the applicant's life or freedom would be threatened in the future in the country of removal." 8 C.F.R. §1208.16(b)(1)(i); *see also Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005) ("The alien bears the burden of showing a 'clear probability' of such persecution."). This presumption, however, "may be rebutted if an asylum officer or immigration judge finds by a preponderance of the evidence: . . . There has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds . . . ." 8 C.F.R. § 1208.16(b)(1)(i).

6

Even if an applicant cannot show past persecution, the applicant "may demonstrate that his

or her life or freedom would be threatened in the future in a country if he or she can establish that

it is more likely than not that he or she would be persecuted on account of race, religion, nationality,

membership in a particular social group, or political opinion upon removal to that country." 8 C.F.R.

§1208.16(b)(2).

### 1. The IJ's Credibility Finding

In his oral decision, the IJ noted that the applicant was not credible or "more accurately . .

. the Court should say he has not met his burden of proof" due to 1) internal inconsistencies in

Kolaj's application; 2) inconsistencies between Kolaj's application and his oral testimony; and 3)

a failure to present apparently available corroborative evidence. Specifically, the IJ pointed out that

Kolaj's application was inconsistent with regard to: his identity; the timing of the travel that led him

to the United States;[5] relationships within his family;[6] whether, in the past, relatives ever applied for

---

[5]The first page of petitioner's application for withholding of removal stated that he last left his country of origin on June 1, 1983 and entered the United States on June 1, 1983. In the attached statement, however, petitioner explained that he "left Yugoslavia and moved to Australia for three (3) months" before traveling to Canada and entering the U.S.

[6]The IJ noted that the petitioner failed to mention the existence of a brother in his application.

7

refugee status in the United States;[7] and the details of the charges currently pending against him in

a U.S. criminal court.[8]

The Sixth Circuit considers credibility determinations findings of fact and reviews them

"under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). When

an IJ decides an applicant's testimony "lacks credibility, the IJ must include in his or her decision

'specific reasons' explaining why the IJ reached such a conclusion." *Singh v. Ashcroft*, 398 F.3d

396, 402 (6th Cir. 2005). These reason, in turn, must relate to "issues that go to the heart of the

applicant's claim." *Sylla*, 388 F.3d at 926.[9]

Some of the aforementioned inconsistencies are irrelevant for the purposes of a credibility

determination because they do not "go to the heart of the applicant's claim." *Sylla*, 388 F.3d at 926;

*see also Mece v. Gonzales*, 415 F.3d 562, 572 (6th Cir. 2005) ("[A]lleged 'inconsistencies and

---

[7] In his application, the petitioner answered "No" to the question: "Have you, your spouse, your child(ren), your parents, or your siblings ever applied to the United States Government for refugee status, asylum, or withholding of removal?" In his oral testimony, however, petitioner explained that the United States government granted political asylum to his brother Angel and sister Rushe.

[8] According to petitioner's I-589 application, he was "charged with fabricating a lottery ticket from a Motor City Casino." Yet in his oral testimony Kolaj claimed he didn't know what he was convicted of and that "[t]hey never proved I was guilty."

[9] The REAL ID Act of 2005 (Pub. L 109-13, 119 Stat. 231) amended 8 U.S.C. § 1158(b)(1)(B)(iii) to allow the trier of fact to make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). This updated standard, however, "only applies to aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005, the effective date of this division of the Act." *Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006). Kolaj applied for withholding of removal under the Immigration and Nationality Act and United Nations Convention Against Torture on July 14, 2004.

deficiencies' . . . come nowhere close to supporting the conclusion that the substance of the claim of persecution is false."). Nevertheless, at least one of the inconsistent statements is central to the applicant's claim for withholding of removal.

The most notable omission is Kolaj's failure to mention his active party affiliation in his application or his statement attached to the application (*Compare* Pet'r App. at 158-59 (application not mentioning any party affiliation), *with id.* at 49 (testimony describing his involvement in the DPK), *id.* at 70 (testimony that Catholic men who participated in DPK politics were murdered), *and id.* at 74 (testimony that Islamic groups are against those who were involved in the DPK). Instead his statement recounts family members' political backgrounds and only notes that his arrests were due to his being an Albanian.[10]

Furthermore, while the "important question is whether the events actually occurred, not whether an alien made inconsistent statements," Kolaj provided no corroborating evidence to support his allegations. The IJ correctly observed that while the law does not require an applicant to present corroborating evidence in order to win, "where it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382-83 (6th Cir. 2004) (expressly approving the BIA's corroboration rule); *see also Vasha v. Gonzales*, 410 F.3d 863, 872 n.3 (6th Cir.

---

[10]Kolaj did, however, note that he feared future persecution due to his "earlier protest of the Serbian Regime."

9

2005) (quoting *Dorosh*).[11]  In some cases, the lack of such evidence has even supported a negative credibility finding. *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) ("The IJ also did not err in using Pilica's failure to provide corroborating evidence as further support for the negative credibility finding.").

In this case, the applicant's testimony included information involving numerous relatives and siblings – including three who apparently live in the Detroit-area – none of whom provided any corroborating affidavits or statements.  It was not improper for the IJ to consider this lack of corroboration when assessing credibility.

Due to these problems, "[a]ny reasonable adjudicator would not be compelled to reach a contrary conclusion from the one reached here, and thus, the IJ's credibility finding was supported by substantial evidence." *Amir v. Gonzales*, 467 F.3d 921, 925-26 (6th Cir. 2006).

### 2. Fundamental Change in Circumstance

Even were this court to put aside the IJ's credibility concerns and assume past persecution, the government has successfully rebutted any presumption of future persecution.[12]

---

[11]*But see Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir.1994) ("[T]he alien's own testimony can be sufficient to support an application for asylum, 'where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.'").

[12]The IJ held that Kolaj failed to show past persecution but did not provide any definitive explanation for this conclusion.  (It appears, however, that the IJ may have intended to rely on the aforementioned lack of corroborative evidence.)  Instead, for the purposes of a full analysis, he assumed Kolaj's allegations did amount to past persecution and moved on to the government's effort to show a change in country conditions.  The court, therefore, follows the same methodology here.

*Kolaj v. Mukasey*
Case No. 08-3543

To rebut the presumption of future persecution, the government submitted two State Department Country Reports. The IJ felt that these reports showed the required "fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds . . . ." 8 C.F.R. §1208.16(b)(1)(i). Kolaj, however, argues that the government's evidence "is insufficient to meet its burden."

Case law in this circuit establishes that State Department Country Reports can overcome the presumption of future persecution by showing a change in country conditions. *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (holding that an IJ may rely on State Department Reports to rebut the presumption of a well-founded fear of future persecution).[13] In this case the IJ looked at the most recent reports and numerous events that have occurred in the years since Kolaj left Kosovo. Among other things, a communist government no longer controls the former Yugoslavian state. Instead, pursuant to United Nations Security Council Resolution 1244, the United Nations Interim Administration Mission in Kosovo (UNMIK) administers the region in cooperation with an

_____

[13]*See also Gojani v. Mukasey*, 266 F. App'x 420, 423 (6th Cir. 2008) (unpublished disposition) (citing the IJ's principal reliance on State Department Country Reports to support his finding that conditions have changed in Kosovo); *Duhanaj v. Gonzales*, 250 F. App'x 681, 688 (6th Cir. 2007) (unpublished disposition) ("assuming arguendo the demonstration of past persecution" and citing State Department Reports to hold that substantial evidence supports "the IJ's conclusion that petitioner does not have a well-founded fear of future persecution if returned to Serbia-Montenegro"); *Rasi v. Gonzales*, 179 F. App'x 284, 289 (6th Cir. 2006) (unpublished disposition) (reviewing Country Reports and holding that a reasonable adjudicator would not be compelled to reach a conclusion contrary to the IJ's conclusion that "country conditions have 'changed remarkably' and that 'Albanians from Kosovo upon their return are not subject to a pattern or practice of mistreatment'"); *Koliada v. INS*, 259 F.3d 482, 487 (6th Cir. 2001) (noting that "State Department reports on other countries are entitled to significant deference when assessing conditions there"). *But see Koliada*, 259 F.3d at 487 (acknowledging criticisms of State Department Reports).

11

Assembly dominated by ethnic Albanians. Furthermore, the political landscape is dominated by four Kosovo Albanian political parties and in 2006, in contrast to prior years, "there were no reports of the government or its agents committing arbitrary, unlawful killings."

Therefore, even assuming the past persecution Kolaj suffered creates a presumption of future persecution, the government rebutted this presumption by showing a fundamental change in country conditions. The evidence and arguments presented before this court do not compel a finding otherwise.

### 3. Likelihood of Future Persecution

Kolaj can also obtain withholding of removal by showing that it is more likely than not that he would suffer persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion" upon removal to the country in question. 8 C.F.R. §1208.16(b)(2). In such a situation the applicant need not "provide evidence that he or she would be singled out individually for such persecution" as long as the applicant can establish "a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion;" and show "his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country." *Id.*

As the IJ noted, the "respondent really has not proven anything except that he is from Kosovo." Yet the IJ also went a step further, relying on recent State Department Reports to counter any potential arguments of a pattern or practice of persecution of a group of persons similar to Kolaj. While the 2005 Report described some politically motivated killings of ethnic Albanians, the 2006

Report highlighted improvements, while providing nothing to indicate "that anyone in respondent's purported shoes was subject to a pattern or practice of persecution."

Petitioner now cites the same Reports for evidence that the people of Kosovo suffered "numerous acts of political, religious, and ethnic violence" in 2005 and 2006. Most of the citations, however, highlight acts of violence against Serbians and Serbian Orthodox leaders. While the 2006 Report did note "numerous reports of politically motivated attacks and threats against Kosovo Albanian political and institutional figures," without any evidence or allegation that Kolaj is a political or institutional figure, this statement does not compel the conclusion that it is more likely than not that his life or freedom would be threatened upon his return to Kosovo.

**C. Withholding of Removal Under the United Nations Convention Against Torture**

Under 8 U.S.C. § 1252(d)(1), a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." In this circuit, courts "consider waived all issues not raised in an appellant's brief [to the BIA], even if the issue had been raised in the notice of appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 558-59 (6th Cir. 2004); *see also Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (holding an alien must raise claims with the BIA before they are reviewed by the appellate court, so that the BIA can correct the error). Kolaj's brief to the BIA failed to present any arguments regarding the IJ's rejection of Kolaj's application for withholding of removal under the United Nations CAT. *See Rasi v. Gonzales*, 179 F. App'x 284, 290 (6th Cir. 2006) (unpublished disposition) (holding that the court lacked jurisdiction on petitioner's CAT claim because the alien failed to challenge denial of CAT protection before the BIA). Therefore, Kolaj waived his United Nations CAT claim.

## III. CONCLUSION

For these reasons, the court **DENIES** Kolaj's petition for review of the BIA's final order

denying withholding of removal.