NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0722n.06
Filed: October 9, 2007

No. 06-4173

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TOMO DUHANAJ, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

_____

BEFORE:  GILMAN and GRIFFIN, Circuit Judges; and ACKERMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner Tomo Duhanaj ("Petitioner"), an ethnic Albanian and native and citizen of the Kosovo region of Serbia-Montenegro, has filed this petition for review of an adverse decision and order of the Board of Immigration Appeals ("BIA"), affirming the decision of an immigration judge ("IJ") denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1]  For the reasons set forth below, we deny Duhanaj's petition for review of the final order of the BIA.

_____

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

[1]United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85; 8 C.F.R. § 208.18.

I.

Petitioner Tomo Duhanaj is an ethnic Albanian of Roman Catholic faith and a citizen of Serbia-Montenegro. He was born on January 19, 1970, in Kosovo, Yugoslavia. Petitioner entered the United States illegally on June 19, 2002, and shortly thereafter was arrested by the Department of Homeland Security ("DHS"). On June 20, 2002, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging petitioner with being subject to removal pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.

On May 27, 2003, petitioner submitted an application for asylum, withholding of removal, and protection under the CAT to the immigration court in Detroit, Michigan. Petitioner, through counsel, conceded removability, but alleged past persecution and a well-founded fear of future persecution in his application. Specifically, petitioner stated that he feared future persecution and torture by Serbians, Muslims, and other ethnic Albanians of differing political views if returned to Kosovo, based on his status as a Catholic Albanian and member of the Albanian Christian Party of Kosovo (the Partia Shqiptare Demokristiane e Kosoves or "PShDK").

A removal hearing commenced on February 1, 2005. At the hearing, petitioner testified that for most of his life, he was active in the movement for equal rights and independence for Albanians in Kosovo. He testified to three discrete instances of alleged past persecution, stating that the first such instance occurred on June 17, 1985, when he was arrested, detained for at least twelve hours, beaten periodically, and threatened with physical harm or death after participating in a demonstration

- 2 -

in the city of Kline, Kosovo, for a "Republic of Kosava." Duhanaj testified that as a consequence of his political activities, he was barred by school authorities from attending high school and thereafter devoted his time to working for freedom for Kosovo.

The second incident of alleged persecution occurred in October of 1986, when petitioner was talking with students about politics in the schoolyard of the Kline high school. The police were called when school officials realized that petitioner was not a student at the school. Petitioner was taken into police custody and questioned for several hours about his presence at the school, his previous arrest, and his political activities. Duhanaj alleged that he was beaten and released with the threat that he would be killed if he continued to oppose the government.

Petitioner and his fiancee, Prende Duhanaj, were married in November 1986. They lived briefly in Kline, Kosovo, before traveling to and illegally entering the United States. Petitioner and his wife stayed in this country for more than two years, during which time a daughter was born. Duhanaj and his family thereafter returned to Kosovo because he believed that political tensions had "cooled down." When he arrived, however, he perceived that the Serbians were taking away the rights of ethnic Albanians, excluding them from government jobs, and exercising greater control over Kosovo. Petitioner was conscripted into military service in the Yugoslavian army and was, on one occasion, punished for speaking his native language. He was discharged from the military in October 1990 and returned to Kosovo to join his family.

Duhanaj testified that in the ensuing year, the Serbian forces began forcible searches of the homes of ethnic Albanians. His house was searched in July 1991, and the police confiscated pro-

Albanian photos, books, and pamphlets. Petitioner testified that he was detained for three or four days, interrogated about the propaganda and his political activities, and severely beaten, to the extent that he allegedly suffered fractures to his left hand and swelling in his face, eyes, legs, and hands. While he was in custody, the police again went to his home, destroyed items in the house, and threatened his wife and family.

After this incident, petitioner and his wife and daughter traveled to Germany, where his wife applied for and was granted a United States visa. Petitioner's wife and daughter entered the United States in October 1991, and petitioner, lacking valid travel documents, remained in Europe for another ten months, spending time in Germany and with family members in Switzerland before again reentering the United States from Mexico without being admitted or paroled. Once here, petitioner traveled to Detroit to join his wife and daughter. Duhanaj testified that at no point during his stays in the United States did he apply for asylum, because he believed that the political situation in Kosovo would improve and he would be able to return to his home country.

In Michigan, petitioner became involved with pro-Kosovo political organizations and joined the local branch of the Lidhja Demokratike e Kosoves ("LDK"), the Democratic Party of Kosovo, with which he had been affiliated in Kosovo. Duhanaj testified that he participated in fundraising and demonstrations for the cause of a free Kosovo. After the war broke out in Kosovo in 1998, he attended a meeting in Michigan sponsored by the LDK and the Kosovo Liberation Army ("KLA"). Substantial funds totaling approximately $150,000 were raised at the meeting, and petitioner was

entrusted with keeping the money at his house.[2]  Petitioner eventually left the LDK and joined

"Homeland Calling," an Albanian expatriate organization.  He also began an association with the

KLA.

In 1999, the United Nations ("UN") assumed control of the Kosovo region.  In the spring of

2001, Duhanaj returned to Kosovo, with the intention that his wife and child would join him in the

future.  Petitioner met with the former KLA leader and the heads of several other political parties.

He joined the PShDK.  Petitioner testified that, although the conflict with Serbia had calmed due to

the UN's intervention, Albanians began fighting among each other.   The KLA and other political

parties accused the PShDK of collaborating with the Serbians and not supporting the war.  Muslim

Albanians believed that Catholic Albanians and the PShDK were allied with the Serbians, who were

Orthodox Christians.  Thus, other ethnic Albanians with different political views began to harass

petitioner.  Duhanaj alleged that after a meeting of the PShDK in 2002, he was accosted and pistol

whipped by two men, who ordered him to leave the party within one week or he would be killed.

In April 2002, after this incident, petitioner left Kosovo for the final time and was arrested upon his

illegal entry into the United States.

At the removal hearing, Duhanaj testified that it was his position in a political party other

than the ruling party that made him a target for abuse if he returned to his home country.  He added

that his Roman Catholic faith placed him at odds with other Christian and Muslim Albanians and

---

[2]Petitioner claimed that while in possession of the funds, he was threatened by individuals
claiming to be from the KLA.

was a potential source of future persecution upon his return to Kosovo. Petitioner submitted documentary evidence in support of his asylum application, including photographs of himself, family, and various political leaders, letters written on his behalf, and political paraphernalia. Newspaper articles described political infighting among ethnic Albanians in Kosovo and violence and intimidation against Albanians associated with the LDK and KLA. Petitioner also submitted photos of himself with prominent Kosovar Albanian, American, and UN officials and politicians, including President Clinton.

At the conclusion of the removal hearing on February 25, 2005, the IJ rendered an oral decision denying Duhanaj's applications for asylum, withholding of removal, and protection under the CAT. With regard to petitioner's asylum claim, the IJ found that petitioner had not carried his burden of demonstrating that the alleged incidents of persecution actually transpired and, even if such events did occur, they did not rise to the level of past persecution. Even assuming arguendo that Duhanaj suffered past persecution and thus was entitled to a rebuttable presumption of future persecution, the IJ further concluded that the presumption was rebutted by evidence of Duhanaj's return trips to Kosovo and improved country conditions following UN intervention in 1999, which indicated that there was no longer a pattern or practice of political persecution in Kosovo against any group that petitioner might claim as a basis for asylum. The IJ concluded that petitioner possessed neither an objective nor subjective well-founded fear of future persecution. The IJ also denied Duhanaj's claims for humanitarian asylum, withholding of removal, and protection under the CAT

on the grounds that Duhanaj had failed to satisfy the applicable stringent burdens of proof necessary to prevail on these claims.

The IJ's decision turned not only upon the perceived lack of credibility of Duhanaj, but also upon the lack of corroborating evidence. The IJ noted that petitioner's wife could have corroborated at least one of petitioner's arrests and could have testified to the injuries he suffered as a result of the alleged incidents of persecution; however, no reasons were given for her failure to appear or to submit an affidavit. Likewise, petitioner's parents, also living in the Detroit area, could have offered supporting evidence concerning petitioner's alleged expulsion from school, as well as his first arrest and other claims material to his applications, but they did not do so, and no explanation for this failure was offered by petitioner.

The IJ noted similarly with regard to the proffered documentary evidence that the letters in support of petitioner were written by individuals in the Detroit area who could have, but did not, testify. These letters were not executed under oath and no chain of custody was established. The sources of the documents and letters from Kosovo were never identified by petitioner; thus, without further chain-of-custody verification or authentication, this evidence was given no weight by the IJ. These materials were found by the IJ to be lacking in relevant detail, including dates, legible signatures, and identifications. One exhibit, received into evidence without objection, indicated that Duhanaj had used several aliases to obtain a fake Michigan driver's license and a fraudulent passport. The IJ further found inherent inconsistencies and lack of corroboration in petitioner's account of the discrete incidents of persecution. The Department of State Country Reports offered

by petitioner negated his claim, showing no pattern or practice of persecution of members of any

group situated similarly to petitioner and indicating that the head of the Kosovo government at the

time of the hearing was an ethnic Albanian.  For these reasons, the IJ denied petitioner's application

for relief, and he was ordered removed to Serbia-Montenegro.

On August 2, 2006, the BIA, in a brief one-member decision, affirmed the decision of the

IJ and dismissed petitioner's appeal, emphasizing principally Duhanaj's failure to provide adequate

corroboration for his claims:

> The [IJ] correctly found that respondent failed to meet his burden of proof because
> he did not provide sufficient corroboration for certain alleged facts pertaining to the
> specifics of his claim where it was reasonable to expect such evidence (I.J. at 12-13,
> 32-33).  *See Matter of M-D-*, 21 I & N Dec. 1180 (BIA 1998) (an alien who does not
> provide sufficient evidence to corroborate his claim of persecution, where it is
> reasonable to expect such evidence, fails to meet his burden of proof); *see also*
> *Matter of S-M-J-*, 21 I & N Dec. 722 (BIA 1997) (an asylum applicant should provide
> documentary support for material facts which are central to his claim and easily
> subject to verification).  Specifically, he did not provide any corroborative testimony
> by his wife or parents, all of whom are key witnesses to his alleged incidents of past
> harm.  Such corroborating testimonies were reasonably available to the respondent
> because his wife and parents reside in the Detroit area.  Furthermore, he does not
> provide any explanation, either before the Immigration Court [or] on appeal, for the
> absence of their testimonies.  Due to [petitioner's] failure to produce such
> corroborating testimonies or to satisfactorily explain their absence, we find that he
> has failed to meet his burden of proof for asylum, withholding of removal, or
> protection under the [CAT].

In addition, citing *Matter of Chen*, 20 I & N Dec. 16 (BIA 1989), the BIA considered and

rejected Duhanaj's contention that he was entitled to humanitarian asylum pursuant to 8 C.F.R. §

1208.13(b)(1)(iii) due to the alleged severity of his past persecution, finding that any mistreatment

was not of the gravity necessary to warrant such humanitarian relief.

Duhanaj now petitions this court for review of the BIA's order denying his appeal.

## II.

We review de novo issues of law, *Csekinek v. INS,* 391 F.3d 819, 822 (6th Cir. 2004), and scrutinize the factual findings of the BIA, including credibility determinations, using the highly deferential substantial evidence standard, which provides that the administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). In other words, reversal of a factual determination by the BIA is warranted only when we find that the evidence not only supports a contrary conclusion, but compels it. *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004). To the extent that the BIA adopted the IJ's reasoning, we review the IJ's decision. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

## III.

Duhanaj first argues that the BIA erred in denying his application for asylum for lack of corroborating evidence. He complains that in holding that he failed to provide sufficient corroborating evidence where it was reasonable to expect such evidence, the BIA has imposed an insurmountable corroboration requirement to the effect that no matter the existence of evidence supporting an applicant's claim, an asylum application now can be denied based upon the absence of other evidence that, in the view of the BIA, is relevant. Duhanaj contends that the evidence of record compels the conclusion that petitioner was credible and corroborated adequately his claims of past persecution and a well-founded fear of future persecution. Duhanaj suggests that, although

the threat from Serbians has subsided, he is reasonably fearful of harm from other ethnic Albanians who disagree with his Catholic faith and political affiliations. At the very least, Duhanaj contends, conditions in Kosovo have not improved in the region to such an extent that it is now safe for asylum applicants to return there.

Pursuant to the INA, asylum may be granted to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005) (quoting 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A)). An asylum applicant bears the burden of demonstrating that "persecution is a reasonable possibility should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (internal citation omitted). If past persecution is established, then the alien is presumed to have a well-founded fear of future persecution. *Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003). The government may rebut the presumption by showing by a preponderance of the evidence that "since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return." *Id.*; *see also* 8 C.F.R. § 208.13(b)(1)(i).

Even if an applicant has failed to establish past persecution, he may still be able to show a well-founded fear of future persecution through proof that: (1) he fears persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he returned to his home

country; and (3) he is unable or unwilling to return because of such fear. 8 C.F.R. § 208.13(b). A well-founded fear of future persecution has both subjective and objective components: "An alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic,* 33 F.3d at 620-21 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987)). Moreover, the applicant must show that the feared persecution would be *on account of* a qualifying ground. *Id*. at 621.

Corroborating evidence of an applicant's claims is not essential in all circumstances to enable the applicant to prevail on an asylum claim. "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a) (asylum proceedings), 208.16(b) (withholding of removal). In *Dorosh,* we examined the meaning of these regulations, stating:

> The BIA has interpreted this permissive language to mean that "where an alien's testimony is the only evidence available, it can suffice where [it] is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear." *In re M-D-*, 1998 WL 127881, 21 I & N Dec. 1180, 1182 (BIA 1998) (citing *Matter of Dass*, 1989 WL 331876, 20 I & N Dec. 120, 124 (BIA 1989)). However, the BIA has also stated that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *In re S-M-J-*, 1997 WL 80984, 21 I & N Dec. 722, 724-26 (BIA 1997).

398 F.3d at 382.

In *Dorosh,* we "expressly approv[ed]" the BIA's corroboration rule and rejected the petitioner's argument, made in the present case as well, that the BIA corroboration rule should be applied only in cases in which the applicant's credibility is questioned or adversely determined, not in cases in which the testimony of the applicant is deemed credible. *Id*. We noted that the BIA's corroboration rule does not unduly burden the applicant, because "supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* at 382-83 (internal quotation marks omitted).

Here, the IJ and BIA properly applied the corroboration rule to the evidence presented by Duhanaj. It was entirely reasonable to expect Duhanaj to elicit some form of corroboration, either in the form of testimony or affidavits, from his wife and parents, who lived in the Detroit area in close proximity to the immigration proceedings. According to petitioner's own version of events, they were witnesses to some of the alleged acts of past persecution and thus could have offered enlightening testimony regarding the alleged discrete acts of persecution. Duhanaj, however, never explained his failure to produce these readily available corroborating witnesses.

Moreover, as the IJ noted, the documentary evidence provided by petitioner was inadequately corroborated and authenticated. The IJ engaged in a detailed analysis of the proffered documents and letters, observing that such evidence was unsworn, often undated, vague, and inconsistent with petitioner's testimony. Again, such corroboration should have been expected, because many of the materials came from individuals in the Detroit area who could have either testified or offered

affidavits in support of petitioner. Thus, as the IJ noted, petitioner's affiliation with the numerous pro-Kosovo political organizations was never firmly established.

Under the circumstances, we conclude that the IJ's adverse credibility determination and resultant finding that Duhanaj failed to demonstrate past persecution in Serbia-Montenegro are supported by substantial evidence. Moreover, even assuming arguendo the demonstration of past persecution, the IJ did not err in holding that the evidence of changed country conditions and Duhanaj's actions in returning three times to Kosovo overcame the presumption of a well-founded fear of future persecution if returned to his home country.

The 2003 DOS Country Report on Human Rights Practices in Serbia and Montenegro, made a part of the record in the instant case, noted that "[a]lthough some problems persisted, the [Montenegran] and Serbian governments' policies toward minorities improved greatly since Milosevic's removal from office." In fact, the report reflects significant improvement in human rights conditions for ethnic Albanians in Kosovo following UN intervention in 1999. With regard to freedom of religion, the DOS Report observed that "[d]ifferences between Muslim and Catholic communities tended to be overshadowed by their common ethnic Albanian heritage," and further noted that "Kosovo has a multi-party system with three dominate mono-ethnic Albanian parties and several minority parties and coalitions." *See also Duhani v. Gonzales*, 214 F. App'x 541, 546 (6th Cir. 2007), *Grishaj v. Gonzales*, 192 F. App'x 493, 497 (6th Cir. 2006), and *Rasi v. Gonzales*, 179 F. App'x 284, 289 (6th Cir. 2006) (finding insufficient the ethnic Albanian petitioners' fears of future persecution in light of improved country conditions in Serbia-Montenegro following UN

- 13 -

intervention in 1999). Thus, the IJ's conclusion that petitioner does not have a well-founded fear of future persecution if returned to Serbia-Montenegro is supported by substantial evidence.

IV.

Next, Duhanaj maintains that the BIA erred in failing to consider his eligibility for humanitarian asylum based upon "a reasonable possibility that he . . . may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(B) ("Subsection B"). Although the IJ and the BIA considered and rejected petitioner's humanitarian asylum claim on the alternative ground set forth in 8 C.F.R. § 1208.13(b)(1)(iii)(A) ("Subsection A"), which provides that discretionary humanitarian asylum may be granted if the applicant "has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," petitioner's eligibility for relief under the "other serious harm" prong of Subsection B was not expressly addressed. Duhanaj, however, is not entitled to relief under either prong of the humanitarian asylum regulation because we have made it clear that relief under both Subsections A and B is contingent upon a showing of past persecution. *Hamida v. Gonzales*, 478 F.3d 734, 740-41 (6th Cir. 2007); *Liti v. Gonzales*, 411 F.3d 631, 641-42 (6th Cir. 2005). Consequently, Duhanaj's failure to demonstrate past persecution is fatal to his claim for asylum on humanitarian grounds.

V.

Finally, Duhanaj asserts that the BIA erred by denying his applications for withholding of removal and protection under the CAT. We disagree.

An alien may secure withholding of removal if he can show that his "life or freedom would be threatened in that country [to which he would be sent] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b). The petitioner must establish a "clear probability" that his life would be threatened on account of one of the stated grounds if forced to return to his home country. *Hamida*, 478 F.3d at 741. Because this burden of proof is more stringent than that required to establish eligibility for asylum, an applicant who fails to qualify for asylum necessarily cannot meet the requirements for withholding of removal. *Id.* In light of our conclusion that Duhanaj does not qualify for asylum, his claim for withholding of removal is without merit.

To be eligible for protection under CAT, the applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Duhanaj has offered no evidence whatsoever that torture, as defined in 8 C.F.R. § 208.18(a)(2), is more likely than not to occur upon his return to Serbia-Montenegro. His claim for relief under the CAT therefore cannot succeed. *See Hamida*, 478 F.3d at 741-42.

VI.

For the above stated reasons, we deny Duhanaj's petition for review.