**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0083n.06
Filed: February 2, 2009

**No. 07-4509**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TUMUHEKI SHARPE BIMBONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM A |
| v. | ) | DECISION OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| MICHAEL B. MUKASEY, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: GUY, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Ugandan citizen Tumuheki Sharpe Bimbona petitions for review of a Board of Immigration Appeals ("BIA") decision denying his motion to reopen removal proceedings as untimely. Because the BIA did not abuse its discretion in denying Bimbona's motion to reopen, we deny Bimbona's petition for review.

I.

Bimbona entered the United States on a visitor visa in December 1999, allegedly fleeing persecution by a Ugandan government that suspected him of supporting a rebel group, the Allied Democratic Forces. According to Bimbona, Ugandan soldiers coercively interrogated him,

imprisoned him for three weeks, raped his wife and sister, tortured and killed his brother, and murdered one of his political colleagues. Once in the United States, Bimbona settled in Detroit, Michigan.

In February 2001, the Immigration and Naturalization Service (now the Department of Homeland Security, or "DHS") initiated removal proceedings, charging Bimbona with overstaying his visa in violation of 8 U.S.C. § 1227(a)(1)(B). Although Bimbona conceded removability, with the help of the nonprofit organization Freedom House and its accredited representative, Matthew Monroe, he applied for political asylum, withholding of removal, and relief under the Convention Against Torture.

Citing Bimbona's lack of credibility, an immigration judge ("IJ") denied his application and ordered his removal to Uganda. Specifically, the IJ noted several inconsistencies between Bimbona's asylum application, testimony, and attached documents; were those inconsistencies absent, the IJ noted that it would "at least grant [Bimbona's] asylum application." Bimbona timely appealed with the help of Monroe and Freedom House attorney David Koelsch. The BIA affirmed the IJ's order and dismissed the appeal on September 17, 2003.

Bimbona alleges that he had no notice of the BIA decision until late February or early March of 2004—well past the 90-day filing deadline for motions to reopen—when he received a letter from the DHS notifying him of a June 21, 2004 deportation date. Afterward, Bimbona claims that he "immediately" went to Freedom House, where "someone who worked with Freedom House"

informed him that it was too late to appeal, and that he could apply for asylum in Canada. In March or April of 2004, Bimbona also consulted—but did not retain—a different immigration attorney, Theodore Sherman, who similarly told Bimbona that "it was too late to do anything."

During this period, Bimbona alleges that he suffered from depression and alcoholism, both of which intensified after he learned of his wife's October 2003 suicide. But in 2005 Bimbona moved to California and married another Ugandan woman—a lawful permanent resident—with whom he had two children.

Over three years after the BIA decision, Bimbona met his present counsel, Rhoda Wilkinson Domingo. After retaining Domingo on March 28, 2007, Bimbona filed a motion to reopen with the BIA on June 27, 2007. Essentially, Bimbona argued that equitable tolling of the time limitation should apply due to ineffective assistance of counsel; or, alternatively, the time limitation did not apply because of changed country conditions.

The BIA denied Bimbona's petition to reopen on November 21, 2007, rejecting his equitable-tolling argument due to lack of diligence, and finding no merit in his changed-country-conditions contention in light of the IJ's earlier adverse-credibility finding. Bimbona timely petitioned for review of the BIA's November 2007 order.[1]

---

[1]Although Bimbona also argues that the BIA erred in its September 2003 decision affirming the IJ's adverse-credibility finding and that the IJ violated Bimbona's due-process rights, we lack jurisdiction to review the former and Bimbona forfeited his right to raise the latter. First, we lack jurisdiction over Bimbona's adverse-credibility challenge because Bimbona's petition only pertained to the November 2007 decision and, regardless, a motion to reopen does not toll the thirty-day

II.

This court reviews the denial of a motion to reopen for abuse of discretion. *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). But to the extent that Bimbona's ineffective-assistance-of-counsel claim raises an issue of law, we apply de novo review. *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005). The BIA's broad discretion in deciding whether to reopen proceedings places a heavy burden on the petitioner. *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). Abuse of discretion occurs only where the BIA denied a motion to reopen "without a rational explanation," or where the denial "inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id.* (internal quotation marks and citation omitted).

III.

Ordinarily, a petitioner must file a motion to reopen "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). Although Bimbona filed his motion to reopen nearly three years after the BIA affirmed the removal order, he argues that

requirement for appealing a removal order. *See* 8 U.S.C. § 1252(b)(1); *Rreshpja v. Gonzales*, 420 F.3d 551, 559 (6th Cir. 2005) (refusing to consider a BIA decision not designated in the petition for review); *Prekaj v. INS*, 384 F.3d 265, 267–68 (6th Cir. 2004) (finding no jurisdiction where "[p]etitioners did not seek judicial review of the [earlier] decision within thirty days of its issuance"). Second, Bimbona forfeited his due-process argument because he never raised it before the BIA. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).

this court ought to deem the motion timely because two exceptions apply: equitable tolling and changed country conditions. We treat each in turn.

## A.

First, Bimbona argues that the BIA abused its discretion by refusing to apply equitable tolling based on ineffective assistance of counsel; specifically, he argues that because Koelsch and Freedom House staff failed to notify him of the BIA's September 2003 decision and provided misinformation about his legal options, he lost his opportunity to file a timely petition for review or motion to reopen. This court recently suggested that "[e]quitable tolling may apply when a petitioner has received ineffective assistance of counsel." *Barry*, 524 F.3d at 724 (quoting *Ljucovic v. Gonzalez*, 144 F. App'x 500, 503 (6th Cir. 2005)). But for equitable tolling to salvage his untimely motion, Bimbona must exercise due diligence. *Id.*; *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007); *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006). In other words, Bimbona must "prove that the delay in filing the motion to reopen was due to an exceptional circumstance beyond his control." *Tapia-Martinez*, 482 F.3d at 423 (internal citation omitted). Here, the BIA rejected Bimbona's equitable-tolling argument because he failed to exercise due diligence by not retaining an attorney until March 2007 and not filing the motion to reopen until June 2007. We agree.

Bimbona argues that he acted diligently in pursuing his motion to reopen upon discovering his former counsel's alleged ineffective assistance in March 2007; in other words, he urges the panel to measure his diligence from the point he retained new counsel, three years after he received his

deportation letter from the DHS. But the obstacle Bimbona faces in so urging is that the alleged ineffective assistance occurred—at the latest—in early March of 2004. It was then that Bimbona received the DHS deportation letter, which alerted him that Koelsch and Freedom House never notified him of the BIA's September 2003 decision. The BIA reasonably measured diligence from that point. *See Weerasinghe v. Gonzales*, 210 F. App'x 463, 468 (6th Cir. 2006) (measuring due diligence from the point at which the petitioner "knew of the conduct comprising . . . ineffective assistance").

Despite being in position to realize his counsel's alleged deficiency—failure to notify him of a crucial decision in his case—Bimbona made no attempt to retain new counsel or inquire about his immigration status for approximately three years. A delay between being alerted to ineffective assistance of counsel and filing a motion to reopen reflects a lack of due diligence when that delay spans two years, *Ramirez v. Gonzalez*, 247 F. App'x 782, 786 (6th Cir. 2007), fifteen months, *Tapia-Martinez*, 482 F.3d at 423, one year, *Barry*, 524 F.3d at 725, or even eleven months, *Scorteanu*, 339 F.3d at 414. Bimbona's three-year wait cannot be reconciled with claims of due diligence. Even if we assessed his diligence from the date he discovered his legal recourse and then allegedly retained Domingo—March 28, 2007[2]—ninety-one days elapsed before he moved to reopen. *See Barry*, 524 F.3d at 725 (finding claims of diligence to be undercut when the petitioner delayed in filing her motion to reopen for over three months, between August 11 and November 22); *Ajazi v. Gonzales*,

_____

[2]We have reason to doubt Bimbona's assessment of when he contracted with Domingo for legal counsel. In a letter dated March 9, 2007, Domingo notified Freedom House that she had "been retained to represent [Bimbona] in immigration matters" and requested his file.

216 F. App'x 515, 521 (6th Cir. 2007) ("That petitioner nearly missed the ninety day filing period . . . further supports a finding that the BIA did not abuse its discretion."). Because Bimbona failed to exercise due diligence, the BIA did not abuse its discretion in refusing to apply equitable tolling to excuse his untimely motion to reopen. *Tapia-Martinez*, 482 F.3d at 423; *see also Zhao v. INS*, 452 F.3d 154, 157 n.3 (2d Cir. 2006) (describing the failure to prove due diligence as a "fatal shortcoming" to equitably tolling a time limitation for a motion to reopen based on ineffective assistance of counsel).

B.

Second, Bimbona argues that his motion to reopen is timely because conditions in Uganda changed after his 2003 hearing. The 90-day time limitation does not apply where a petitioner bases a motion to reopen on changed country conditions. 8 C.F.R. § 1003.2(c)(3)(ii). But evidence of these changed conditions is only relevant if it was "material and was not available and could not have been discovered or presented at the previous hearing." *Id.* Moreover, allegations of changed country conditions cannot be based on "speculative conclusions or mere assertions of fear of possible persecution." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (internal quotation marks omitted). Rather, a petitioner "must offer reasonably specific information showing a real threat of individual persecution." *Id.* We conclude that Bimbona failed to do so.

In support of his argument, Bimbona supplies documents such as the Department of State's Report on Human Rights Practices for Uganda in 2006, Wikipedia articles, and various reports from

Human Rights Watch and Amnesty International regarding the political situation in Uganda in 2006 and 2007.[3] But Bimbona does not point to any meaningful changes since 2003: President Museveni, then President of Uganda, continues in that office; and the 2006 State Department Report on Human Rights for Uganda states that although the government's human rights record "remained" poor, it noted "improvements in a few areas."

The BIA did not specifically decide whether changed conditions in Uganda warranted not applying the time limitation on Bimbona's motion to reopen. But its failure to do so does not require remand where Bimbona would not be entitled to relief even if conditions had changed. *See Zhang*, 543 F.3d at 854 (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)); *cf. INS v. Ventura*, 537 U.S. 12, 17 (2002) (remanding where the BIA declined to address changed country conditions and the failure to do so proved dispositive). Here, the BIA resolved the issue by deeming the additional evidence immaterial or inconsequential to Bimbona's case because the IJ found him not credible. Bimbona's case relies on the credibility of his alleged persecution; the IJ's adverse-credibility finding and the BIA's concurrence undermine his argument that the outcome of his case would change with the additional evidence. Furthermore, country reports, without more, do not allow Bimbona to make a showing of an *individualized* fear of persecution. The BIA properly rejected the proposition that Bimbona would suffer individual persecution after considering Bimbona's adverse-

---

[3]On August 1, 2008, Bimbona filed a motion for this court to take judicial notice of recent State Department Reports on Uganda, but cited no authority for his proposition. Generally, this court declines to "take judicial notice of facts, including country reports, outside the administrative record." *Sedrakyan v. Gonzales*, 237 F. App'x 76, 83 n.4 (6th Cir. 2007). We thus deny his judicial-notice motion.

credibility finding alongside his "limited additional evidence." *See Zhang*, 543 F.3d at 854 ("The [BIA] rejected the credibility of [Zhang's] evidence . . . . When a necessary element of [Zhang's] claim—whether she faced a risk of individual persecution—failed, so did her entire motion."). The BIA did not abuse its discretion in refusing to find Bimbona's motion timely under the changed-country-conditions provision. *See* 8 C.F.R. § 1003.2(c)(3)(ii).

IV.

We deny Bimbona's petition for review.