NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0107n.06

No. 25-3637

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Mar 05, 2026

KELLY L. STEPHENS, Clerk

DIEGO ORTIZ-LEON and K.O.A., a minor child,

        Petitioners,

v.

PAMELA BONDI, Attorney General,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS

OPINION

---

Before: BOGGS, BATCHELDER, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Petitioners Diego Ortiz-Leon and his minor son, K.O.A., seek review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying Ortiz-Leon's application for asylum, withholding of removal, and humanitarian asylum. Petitioners argue that the BIA committed several errors, the most important of which here is that the BIA erred in finding that there was no nexus between their protected characteristics and their claimed persecution in Guatemala. Petitioners have also sought a stay of removal pending appeal. For the reasons that follow, we **DENY** the petition for review and, given that conclusion, **DISMISS** the motion for a stay of removal as moot.

## I. BACKGROUND

Ortiz-Leon and his son are citizens of Guatemala. Administrative Record ("A.R.") at 196–97 (I-589 Application for Asylum and Withholding of Removal at 1–2). They are indigenous

Quiche Mayans, *id.* at 136 (Proposed Stipulated Facts at 1), and Ortiz-Leon primarily speaks Quiche, although he also speaks "some Spanish," *id.* at 87–88 (Hr'g Tr. at 2–3). The other residents of Petitioners' hometown in Guatemala also speak Quiche. *Id.* at 115 (Hr'g Tr. at 28). Petitioners entered the United States on December 13, 2017, and were not admitted or paroled by an immigration officer. *Id.* at 225–26, 261–62 (Notices to Appear). The other members of their family remained in their hometown in Guatemala. *Id.* at 121 (Hr'g Tr. at 34). On December 15, 2017, the Department of Homeland Security initiated removal proceedings against Petitioners by serving them with notices to appear, but the notices did not include the date and time of their hearings. *Id.* at 225–26, 261–62 (Notices to Appear).

Petitioners applied for asylum and withholding of removal based on their race and membership in a particular social group, and for relief under the Convention Against Torture. *Id.* at 200 (I-589 Application for Asylum and Withholding of Removal at 5). K.O.A. originally submitted a separate application for asylum and withholding of removal. *Id.* at 240–50 (I-589 Application for Asylum and Withholding of Removal at 1–10). Ortiz-Leon's application, however, listed K.O.A. as a child to be "included in [his] application." *Id.* at 197 (I-589 Application for Asylum and Withholding of Removal at 2). Perhaps because K.O.A. is a minor and was included in his father's application, Petitioners did not request that the IJ or BIA consider K.O.A.'s application separately from his derivative claim based on his father's application. *Id.* at 18–29 (Pet'r BIA Br. at 1–9); *id.* at 90, 96, 101–02, 129–31 (Hr'g Tr. at 5, 11, 14–15, 42–44). Therefore, the IJ and the BIA evaluated K.O.A.'s claim to relief as derivative of Ortiz-Leon's application.

Petitioners appeared before the IJ, represented by counsel, and admitted that they were removable. *Id.* at 89 (Hr'g Tr. at 4). The only documents before the IJ at the hearing were the notice to appear, Ortiz-Leon's application for asylum and withholding of removal, his witness list and evidentiary submissions, and his proposed stipulated facts. *Id.* at 101–02 (Hr'g Tr. at 14–15). Petitioners' attorney did not request that the IJ consider any additional documents when the IJ presented him with the opportunity to do so. *Id.* Ortiz-Leon was the only witness who testified before the IJ. *Id.* at 106 (Hr'g Tr. at 19).

According to his testimony, Ortiz-Leon was threatened by gang members who left a note at his house that said that he needed to join the gang or they would kill him. *Id.* at 107 (Hr'g Tr. at 20). Ortiz-Leon "d[oes not] know why [he] was targeted by them, but [he] kn[e]w for sure that the, the end goal of them is to, to, to make their group bigger, more powerful." *Id.* at 110 (Hr'g Tr. at 23). Ortiz-Leon also testified that K.O.A. had been pushed by children at his school and that he hit his head on rocks and lost consciousness. *Id.* at 112–13 (Hr'g Tr. at 25–26). Ortiz-Leon "d[oes not] know why" K.O.A. was targeted by these children. *Id.* at 113 (Hr'g Tr. at 26). He did not contact the authorities regarding either of these incidents. *Id.* at 108, 114 (Hr'g Tr. at 21, 27).

After Ortiz-Leon and K.O.A. came to the United States, his daughter was attacked by a boy in their hometown, some of his family's property was stolen, and electric wires to their home were cut. *Id.* at 122 (Hr'g Tr. at 35). After their daughter was attacked, Ortiz-Leon's wife confronted the attacker's family, and Ortiz-Leon believes that confrontation is why the family's property was damaged or stolen. *Id.* Ortiz-Leon does not know why his daughter was attacked. *Id.* at 124 (Hr'g Tr. at 37). Ortiz-Leon is afraid that he will be killed if he returns to Guatemala because he refuses to join a gang. *Id.* at 116–17 (Hr'g Tr. at 29–30).

3

The IJ issued a decision on August 27, 2020, and determined that Ortiz-Leon was a credible witness. *Id.* at 73, 77 (IJ Op. at 1, 5). The IJ found that Ortiz-Leon's asylum application was untimely, but also analyzed his application on the merits. *Id.* On the merits, the IJ concluded that Ortiz-Leon had not faced persecution in Guatemala on account of his race or particular social group. To support this conclusion, the IJ cited Ortiz-Leon's testimony that he was targeted because the gang was trying to increase its membership, that he was never physically harmed, and that he never informed the police about the threats he faced. *Id.* at 78–79 (IJ Op. at 6–7). The IJ also found that Ortiz-Leon's fear of future persecution was not substantiated because Ortiz-Leon did not know if the gang was still in his town, other members of his family live in the same town and have not had issues with the gang, and there was no evidence of a pattern or practice of persecution in the town. *Id.* at 79 (IJ Op. at 7). The IJ next concluded that the two particular social groups that Petitioners proposed, "Quiche Mayans living in rural areas and Quiche Mayans who refuse to participate in criminal gangs," were "too diffuse . . . to qualify as a particular social group for purposes of asylum." *Id.* at 79–80 (IJ Op. at 7–8). The IJ also noted that there was no evidence that Ortiz-Leon was targeted because of his race. *Id.* at 80 (IJ Op. at 8). Finally, the IJ determined that there was no evidence that Ortiz-Leon would be tortured if he was returned to Guatemala, so he could not obtain relief under the Convention Against Torture. *Id.* at 80–91 (IJ Op. at 8–9). Petitioners' counsel did not request voluntary departure before the IJ. *Id.* at 130–31 (Hr'g Tr. at 43–44).

Petitioners appealed to the BIA, and their brief was filed on February 14, 2022. *Id.* at 18 (Pet'r BIA Br.). Petitioners argued that their asylum application was not untimely, that they suffered persecution, that they were targeted based on their protected characteristics, and that the

Guatemalan government was unwilling or unable to control the gangs that targeted them. *Id.* at 23–27 (Pet'r BIA Br. at 4–8). Petitioners also contended that their fear of future persecution was well founded and that the IJ should have granted them humanitarian asylum. *Id.* at 27–28 (Pet'r BIA Br. at 8–9). Their brief raised no other arguments and did not address their claim for relief under the Convention Against Torture, their allegedly defective notices to appear, or their claimed desire for voluntary departure.

The BIA affirmed the IJ's decision. *Id.* at 3 (BIA Op. at 1). The BIA agreed with the IJ's finding that the gang was not motivated by Ortiz-Leon's membership in the proposed particular social groups, which both revolved around his Quiche Mayan identity. The BIA also concluded that there was no nexus between Ortiz-Leon's protected characteristic and the persecution he experienced, because his protected characteristic "was not even 'a reason' he was or would be targeted." *Id.* at 4–5 (BIA Op. at 2–3). The BIA determined that Petitioners were not entitled to humanitarian asylum because they had not "established past persecution on account of a protected ground." *Id.* at 5 (BIA Op. at 3). The BIA did not address any of the other issues raised in Petitioners' brief because "the motive and nexus findings [were] dispositive of the applications." *Id.*

In addition to the BIA's conclusions on the merits, the BIA found that Petitioners had waived several issues by not raising them in their brief. First, the BIA determined that Petitioners' argument that they were targeted based on their race was waived because they failed meaningfully to develop the argument in their brief. *Id.* at 4 (BIA Op. at 2 n.3). Second, the BIA concluded that Petitioners waived a challenge to the IJ's ruling on the Convention Against Torture because they did not discuss it in their brief. *Id.* at 3 (BIA Op. at 1 n.1). Finally, the BIA noted that "[t]he son

is a derivative on the father's asylum application" and that Petitioners "did not ask the [IJ] to consider the son's application separately and the son did not testify" nor raise the issue on appeal, so they waived the issue. *Id.* at 3 (BIA Op. at 1 n.2).

Petitioners then sought review of the BIA's decision in this court. D. 1-2 (Pet. for Review). Petitioners also filed a motion for a stay of removal pending appeal, D. 9 (Mot. for Stay of Removal), which is also currently before us.

## II. ANALYSIS

Pursuant to 8 U.S.C. § 1252, we have jurisdiction to review the BIA's final order of removal. *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 663 (6th Cir. 2024). Because the BIA issued an opinion "rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Id.* (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). The BIA based its decision on the lack of a nexus between the persecution that Petitioners faced and their protected characteristics, so our analysis focuses on that conclusion. *Id.* at 666, 677. We review the BIA's nexus determinations for substantial evidence. *Id.* at 664. Under that standard, we will affirm the BIA's decision "as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020)).

A noncitizen may be granted asylum if they qualify as a "refugee." 8 U.S.C. § 1158(b)(1)(A). "'[T]o qualify as a refugee,' the applicant must establish 'that he or she has suffered past persecution on the basis of race, religion, nationality, social group, or political opinion; or . . . show[ ] that he or she has a well-founded fear of persecution on one of those same bases.'" *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012) (quoting *Kouljinski v.*

*Keisler*, 505 F.3d 534, 541 (6th Cir. 2007)); *see* 8 U.S.C. § 1101(a)(42)(A). "An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution." *Abdurakhmanov*, 735 F.3d at 345 (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004)). "Otherwise, to establish a well-founded fear of future persecution, the applicant must demonstrate '(1) that [they] ha[ve] a fear of persecution in [their] home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if [they] were to return to that country; and (3) that [they are] unable or unwilling to return to that country because of such fear.'" *Id.* (quoting *Pilica*, 388 F.3d at 950). In order to obtain asylum, Petitioners' protected status must have been "at least one central reason" for their persecution. *Mazariegos-Rodas*, 122 F.4th at 666–67. Their protected status does not need to be the only reason for the persecution—"applicants 'need only show that their persecutor was motivated to harm them, at least in part, on account of an enumerated ground.'" *Id.* (citation modified) (quoting *Bi Xia Qu v. Holden*, 618 F.3d 602, 608 (6th Cir. 2010)). That is referred to as the "nexus" requirement.

To be eligible for withholding of removal, Petitioners must satisfy the same framework, *Abdurakhmanov*, 735 F.3d at 345, with one important difference. To demonstrate nexus, Petitioners must show that their protected status was "a reason" for their persecution—a lower standard than asylum. *Mazariegos-Rodas*, 122 F.4th at 677 (quoting *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 851 (6th Cir. 2023)); *see also Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020).

The BIA's determination that Petitioners' protected status was not a reason for their past or future persecution is supported by substantial evidence.[1]  Ortiz-Leon testified that "[he] d[oes not] know why [he] was targeted by them, but [he] kn[e]w for sure that the, the end goal of them is to, to, to make their group bigger, more powerful."  A.R. at 110 (Hr'g Tr. at 23).  There is no evidence in the record that Ortiz-Leon's Quiche Mayan identity was a reason that the gang threatened him or would continue to do so in the future.[2]  And the same is true of the children who targeted his son.  *Id.* at 113 (Hr'g Tr. at 26).  That the gang targeted Ortiz-Leon to increase its size alone is insufficient to establish the required nexus between his persecution and protected characteristics.  *Ajqui Gomez*, 828 F. App'x at 276–77.

Petitioners' brief summarily asserts that they were persecuted because of their Quiche Mayan identity.  Pet'r Br. at 17–19.  But they point to no evidence that gang members generally target Quiche Mayans or any other evidence that ties their persecution to their Quiche Mayan identity.  Elsewhere in their brief, Petitioners cite evidence that indigenous communities in Guatemala are underrepresented in politics and face discrimination and higher rates of poverty.

---

[1]Petitioners argue that the BIA erred by failing to analyze the nexus requirements for asylum and withholding of removal separately.  Pet'r Br. at 13.  True, as discussed above, the nexus requirements are different.  But the BIA clearly stated that "the respondent's membership in his proposed particular social groups was not even 'a reason' he was or would be targeted."  A.R. at 5 (BIA Opinion at 3).  The BIA also cited *Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020), for the proposition that "the nexus standard for withholding of removal is 'a reason.'"  *Id.*  The BIA clearly applied the lower withholding-of-removal nexus standard and determined that it was not met.  If Petitioners could not satisfy the lower standard, it necessarily follows that they also could not satisfy the higher asylum standard.  Therefore, the BIA did not commit reversible error by failing to analyze separately the two nexus requirements.  *See Ajqui Gomez v. Barr*, 828 F. App'x 272, 277 (6th Cir. 2020).

[2]Petitioners assert that their protected status is based on their Quiche Mayan race and their membership in the two proposed particular social groups, "Quiche Mayans living in rural areas" and "Quiche Mayans who refuse to participate in criminal gangs."  Pet'r Br. at 15, 17–19.  The BIA deemed Petitioners' arguments as to race forfeited, and therefore analyzed only whether their membership in the proposed particular social groups was the basis for the persecution.  A.R. at 4 (BIA Op. at 2 n.3).  Because the only racial identity that Petitioners put forward is being Quiche Mayan, their race is also encompassed in their proposed particular social groups.  Therefore, we need not consider whether the BIA erred in finding that their arguments as to race were forfeited.

Pet'r Br. at 15–16. But such general information about the lack of representation and the discrimination indigenous communities face, which is not specific to Quiche Mayans, is insufficient to show that Petitioners were persecuted because of their identity or were likely to be so persecuted in the future. *Cf. Bedalli v. Holder*, 336 F. App'x 524, 529 (6th Cir. 2009); *Bimbona v. Mukasey*, 314 F. App'x 834, 838–39 (6th Cir. 2009). In the end, there is simply nothing in the record that suggests Petitioners' Quiche Mayan identity was a reason for their persecution or would be in the future.[3]

Petitioners next argue that the BIA erred in holding that they must have faced prior persecution in order to be eligible for humanitarian asylum. Pet'r Br. at 22. "A petitioner is eligible for humanitarian asylum, even in the absence of a well-founded fear of future persecution, if" they "demonstrate[] compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "establish[] that there is a reasonable possibility that [they] may suffer other serious harm upon removal to that country." *Gomez-Romero v. Holder*, 475 F. App'x 621, 626–27 (6th Cir. 2012) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)). But we have held that if a petitioner "did not suffer past persecution, [they] cannot receive humanitarian asylum." *K.H. v. Barr*, 920 F.3d 470, 479 (6th Cir. 2019); *see Gomez-Romero*, 475 F. App'x at 626–27 (holding that humanitarian asylum "is contingent upon a showing of past persecution" (quoting *Duhanaj v. Gonzales,* 250 F. App'x 681, 689 (6th Cir. 2007))).

---

[3]Petitioners raise various other arguments about their withholding of removal and asylum claims that the BIA did not address, such as whether the harm meets the legal definition of persecution and whether the proposed particular social groups are cognizable. Pet'r Br. at 14–17, 19–21. But the BIA did not reach those questions because the nexus and motive determinations were dispositive. A.R. at 5 (BIA Op. at 3). Therefore, we too do not address those arguments. *Guzman-Vazquez*, 959 F.3d at 374–75; *Slyusar v. Holder*, 740 F.3d 1068, 1073 (6th Cir. 2014).

Petitioners raise several arguments for the first time before us. First, Petitioners contend that the BIA erred in finding that their arguments as to the Convention Against Torture and K.O.A.'s separate application were forfeited. Pet'r Br. at 23–26. But Petitioners' brief before the BIA did not mention either of these issues. A.R. at 18–29 (Pet'r BIA Br. at 1–9).[4] Failing to raise issues on appeal before the BIA forfeits them. *Mendez-Rodriguez v. Garland*, No. 21-4181, 2022 WL 16640660, at *3 (6th Cir. Nov. 2, 2022); *Matter of N-N-B*, 29 I. & N. Dec. 79, 79 n.3 (BIA 2025). Therefore, the BIA did not err in determining that they forfeited these arguments. And, contrary to the assertion in Petitioners' Brief, Pet'r Br. at 26, the BIA did not determine that K.O.A. had forfeited his claim to *relief*. K.O.A. could still have received relief based on his father's application because he was included in it. That is why, as Petitioners themselves state, "[t]hrough[out] the immigration court proceedings, the relief application was treated as one and the same for both father and son." *Id.* at 25.

Petitioners ask us to overlook their forfeiture of the Convention Against Torture claim because it presents "clear questions of law" and because "a miscarriage of justice" would result if the claim is not fully examined. *Id.* at 23. But Petitioners must exhaust issues before the BIA in order for us to address them. 8 U.S.C. § 1252(d)(1) (providing that courts "may review a final order of removal only if . . . the [noncitizen] has exhausted all administrative remedies available to the [noncitizen] as of right"). The exhaustion requirement is not jurisdictional, but it is a claims-processing rule that we must generally enforce when the Government raises it, as the Government has here. *See* Resp't Br. at 18–20; *Mazariegos-Rodas*, 122 F.4th at 664. This court, however, has

---

[4]Petitioners also did not argue that K.O.A.'s application should have been considered separately before the IJ. *Id.* at 90, 96, 101–02, 129–31 (Hr'g Tr. at 5, 11, 14–15, 42–44).

not definitively resolved whether the exhaustion requirement may ever be subject to equitable exceptions.[5]

Even if we assume that the exhaustion requirement is subject to equitable exceptions, Petitioners have not persuaded us that they are entitled to one. Petitioners provide no explanation for their failure to challenge the IJ's ruling on the Convention Against Torture before the BIA, and they do not elaborate on what "miscarriage of justice" would result from not reaching the argument. Courts recognizing an equitable exception to the exhaustion requirement have said that petitioners must explain why they did not raise the argument before the agency and the prejudice that would be caused by the court failing to address the argument. *See De La Rosa v. Garland*, 2 F.4th 685, 687 (7th Cir. 2021) (holding that equitable relief from the exhaustion requirement is available if the "timing is excusable" and the petitioners will face prejudice (quoting *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019))). In the absence of any explanation as to why they did not raise their Convention Against Torture argument before the BIA, there is no basis for us to grant an equitable exception to the exhaustion requirement here, if such an exception exists.

Next, Petitioners argue that their notices to appear were defective because they did not list the time and place of their hearing. Pet'r Br. at 11–13. But, yet again, Petitioners did not raise this argument before the agency. Therefore, they have not satisfied the exhaustion requirement, which the Government has raised. *Mazariegos-Rodas*, 122 F.4th at 664; Resp't Br. at 20. Petitioners have not shown that their failure to timely raise the argument is excusable. Petitioners

---

[5]We have, at times, described the exhaustion requirement as a mandatory-claims-processing rule that must be enforced if the Government invokes it. *See, e.g.*, *Palma-Zelaya v. Bondi*, No. 23-3837, 2025 WL 502964, at *2 (6th Cir. Feb. 14, 2025). But no case has directly addressed whether there can be equitable exceptions to the exhaustion requirement, and neither this court, nor the Supreme Court, has decided whether mandatory-claims-processing rules can ever be subject to equitable exceptions. *See, e.g.*, *Perez-Aguilar v. Garland*, No. 21-3757, 2022 WL 796109, at *3 n.2 (6th Cir. Mar. 16, 2022).

point out that, after their hearing before the IJ on August 27, 2020, the Supreme Court decided *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), which held that notices to appear that lack the date and time of the hearing do not trigger the stop-time rule for purposes of calculating how long a noncitizen had been present in the United States. But Petitioners' brief before the BIA was filed on February 14, 2022. A.R. at 18 (Pet'r BIA Br.). Therefore, even if it may have been excusable for Petitioners to fail to raise this argument before the IJ, there is no reason that they could not have raised it before the BIA.

Finally, Petitioners argue that the BIA's failure to consider their "request for voluntary departure" was erroneous. Pet'r Br. at 26. But Petitioners never requested voluntary departure before the IJ or the BIA, A.R. at 18–29 (Pet'r BIA Br. at 1–9); *id.* at 90, 96, 101–02, 129–31 (Hr'g Tr. at 5, 11, 14–15, 42–44), so this claim was not properly exhausted, Resp't Br. at 21; *Mazariegos-Rodas*, 122 F.4th at 664. Petitioners do not explain why they did not raise voluntary departure before the agency. Therefore, their failure to exhaust this claim is not excusable, and we must enforce the exhaustion requirement.

### III. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review and, given that conclusion, **DISMISS** the motion for a stay of removal as moot.